In re Ronald Alton ROWE, Debtor.

FIRST FLORIDA BANK, N.A., a National Banking Association, Plaintiff,

v.

Ronald Alton ROWE, Defendant.

SOUTHEAST BANK, N.A., Plaintiff,

v.

Ronald Alton ROWE, Defendant.

BARNETT BANK OF POLK COUNTY, Plaintiff,

v.

Ronald Alton ROWE, Defendant.

Bankruptcy No. 86–3790.

Adv. Nos. 86–574, 86–575, 86–581.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 22, 1987.

Shirley Arcuri, Tampa, Fla., for Barnett Bank of Polk County.

W. Ralph Durrance, Lakeland, Fla., for Ronald A. Rowe.

Richard Prosser, Tampa, Fla., for Southeast Bank.

Thomas Mimms, Jr., Tampa, Fla., for First Florida Bank.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matters under consideration are three (3) adversary proceedings filed by Barnett Bank of Polk County, First Florida Bank and Southeast Bank against the Debtor, Ronald A. Rowe. Barnett's complaint sounds in four (4) counts. Count I alleges that the Debtor, with the intent to hinder, delay, or defraud creditors, transferred, removed or concealed property of the estate within one year before the date of filing of the Petition. (11 U.S.C. § 727(a)(2)) Count II requests denial of the Debtor's discharge for failure to keep or preserve books and records. (11 U.S.C. § 727(a)(3)) Count III also seeks to deny the Defendant a discharge for his failure to satisfactorily explain the loss of his assets. (11 U.S.C. § 727(a)(5)) In Count IV, Barnett seeks to except its debt from discharge for actual fraud. (11 U.S.C. § 523(a)(2)(A))

Counts I and II of Southeast's complaint are based upon 11 U.S.C. § 727(a)(3) and (a)(5), respectively. First Florida Bank has filed a one count complaint which seeks to deny the Debtor a discharge under 11 U.S.C. § 727(a)(2), (3), and (5).

After the pre-trial conference in this matter, this Court entered its Order consolidating these adversary proceedings for purposes of discovery and trial. Since Count IV of Barnett's complaint to determine the non-dischargeability of its debt would be rendered moot if the objections to discharge were sustained, the parties stipulated to sever it pending the outcome of the trial. The facts relevant to a resolution of this controversy as established at the final evidentiary hearing are as follows.

The Debtor, Ronald A. Rowe, filed his Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on August 28, 1986. Although he has attended different colleges, including the University of North Carolina and Georgia Tech, where he pursued courses in business management, construction and engineering, Mr. Rowe does not have a college degree. He stated that he is ten (10) hours short of an engineering degree. From 1975 through 1982, the Debtor was President and sole shareholder of Progressive Contractors, Inc. In that capacity, he supervised two hundred (200) subcontractors and was responsible for a payroll of between forty (40) and fifty (50) men. During its existence, Progressive Contractors constructed five (5) shopping centers, among other projects, and earned gross revenues of approximately $45,000,000.

From January, 1984, through April 1, 1986, Mr. Rowe was the President and sole shareholder of Progressive Management, Inc. That entity purchased and renovated various buildings located in downtown Auburndale, Florida. It also constructed a seventeen (17) unit condominium complex. A financial statement dated December 31, 1985, valued the Debtor's stock in Progressive Management & Investment, Inc. at $1,435,478.27. Seven months later, the Debtor filed his Petition for Relief under Chapter 7. The Statement of Financial Affairs, filed with the Petition, reflected a significant diminution of the Debtor's assets. The Debtor testified that the majority of his cash was lost gambling. In response to question 14 of the Statement of Financial Affairs, the Debtor scheduled gambling losses totaling $183,040 for the period beginning October 25, 1985 and ending March, 1986. However, on direct examination, the Debtor testified that he lost in excess of $300,000 during that period. The Debtor had no record to document these losses. The Debtor also claimed to have gambled away $82,000 in cash borrowed from Old Stone Credit Corporation. There were no records to substantiate these losses.

As to the disposition of his household goods, the Debtor testified that he sold all household goods and personal possessions at various garage sales from which he received $20,000 as proceeds. The Debtor testified that the proceeds were gambled away. Again there were no records to substantiate the sale of any items, monies received or their subsequent disposition. The Debtor also testified that he sold his antique gun collection at various shows held by the Lakeland Gun Club, receiving between $30,000 to $40,000 in proceeds. He testified that the proceeds were gambled away. There were no receipts, bank deposit slips or other records presented to corroborate this testimony. Ron Schultz, Board Member & Reservation Chairman for the Lakeland Rifle and Pistol Club testified that any sales tax at the show was required to be collected and remitted to him by each exhibitor. He stated that it would have been impossible for the Debtor to collect proceeds of the amount he claimed and pay sales tax without it coming to his attention. Further, Mr. Schultz testified that his records did not indicate that the Debtor had a table reservation for any of the gun shows during that period.

The Debtor further testified that his expensive collection of jewelry which included a 7½ carat diamond ring and a Presidential Edition Rolex watch were lost in a poker game in December, 1985. However, it was brought out in trial that the jewelry which was allegedly lost in a poker game was

included in the Debtor's December 1985 financial statement. At the trial, the Debtor testified that the coin collection valued at $4,018.64 was sold to Ben Ray's Coin Shop in early 1986 and that he could not recall what happened to the proceeds of the sale. Mr. Ben Ray, President of Ray's Coin & Gun Shop, Inc. testified that the Debtor had not sold anything to the shop prior to July, 1987. Originally, the Debtor indicated in his Statement of Financial Affairs that he had sold 865 shares of Silco stock to a Mr. Potts on July 14, 1986 for $3,000. At trial, Mr. Potts testified that the Debtor transferred the shares to him but that he, Mr. Potts, paid nothing for them and he further indicated that he would return the shares to the Debtor if he asked for them. The Debtor conceded, at trial, that he received no consideration for that transfer. The Debtor testified that he had borrowed $23,000 on his life insurance policies and had gambled away these funds. Again there were no records to substantiate his testimony.

Finally, David L. Mullins, a certified public accountant, testified on behalf of the Plaintiffs. Mr. Mullins has been a C.P.A. for ten (10) years and specializes in construction companies and real estate developers. He testified that he reviewed the financial records for the Debtor and Progressive Management & Investment, Inc. With respect to the financial records of Progressive Management, he stated that there were several records missing which he typically expected to find for a small, privately-owned corporation. Specifically, he said that there was no corporate tax returns filed for the fiscal year ending March 31, 1985. Neither was a final tax return filed which would indicate the ultimate disposition and liquidation of the corporation's assets. There were no journals for receipts, disbursements, sales or purchases. There was no general ledger. Schedules of depreciation, mortgage receivables and rent receivables did not exist.

When the Court asked Mr. Mullins to assume that Rowe had transferred $40,000, $17,000 and $23,898 to Progressive Management in March, 1986, and whether he could determine from a review of Pro-gressive Management records the disposition of these transfers, he replied he could not. Rowe earlier had testified that he had made these transfers to Progressive Management in March of 1986.

In reviewing Mr. Rowe's personal records, Mr. Mullins was unable to determine the disposition of the cash on the financial statement totalling $111,540. In reviewing the Debtor's checking accounts for large items during the one year period preceding filing of the bankruptcy, he found checks payable to cash in the total sum of $18,000, checks payable to Ronald Rowe in the total sum of $110,900 and checks payable to Linda Pearson in the total sum of $36,200. Rowe had previously testified that Linda Pearson was his secretary and she cashed the checks payable to her and gave the cash to him. Thus, the total amount of cash received by Rowe from the three categories during the one year period was $165,100. The accountant testified that, once the checks were cashed, the paper trial ended and he was not able to determine the disposition of those funds. He also testified that there were no records to support the disposition or receipt of any funds from the sale of household furnishings, the gun collection, jewelry, or Silco stock. No records were available to account for the disposition of the life insurance loans or monies received from mortgage receivables.

Although Mr. Rowe had previously reported gambling winnings of $43,500 which were offset by losses on his 1984 return, there were no other reports of gambling winnings or losses on the Debtor's tax returns for 1985 or 1986. There was no report of the sale of the gun collection or disposition of the mortgage receivables on the 1985 or 1986 returns even though it would have been to Rowe's tax advantage to have done so.

It is the Plaintiffs' contention that the Debtor is not entitled to a discharge pursuant to § 727(a)(2)(A), (3), and (5).

Under 11 U.S.C. § 727(a)(2)(A) Debtor's discharge may be denied where:

"the debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title [11 U.S.C. § 1 et seq.], has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;"

Under 11 U.S.C. § 727(a)(3) Debtor's discharge may be denied where:

"the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, or papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

Under 11 U.S.C. § 727(a)(5) Debtor's discharge may be denied where:

"the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

■ Under § 727(a)(2)(A), the creditor objecting to discharge bears the burden of proving that a debtor has fraudulently concealed property with the intent to hinder, delay, or defraud his creditors within one year before filing a petition for bankruptcy. *See In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984). Thus the Plaintiff must show that (1) a transfer occurred; (2) that the property transferred was property of the Debtor; (3) that the transfer was within one year of the Petition; and (4) that at the time of the transfer the Debtor possessed the requisite intent to hinder, delay or defraud a creditor. *See In re Clemons*, 42 B.R. 796, 800 (Bankr.S.D.Ohio 1984); citing *In re Reed*, 18 B.R. 462 (Bankr.E.D. Tenn.1982). The law is well settled that the intent must be actual fraudulent intent. *See 4 Collier on Bankruptcy*, § 727.02[3] (15th Ed.1984). Therefore, before a Debtor will be denied a discharge under § 727(a)(2)(A), his actual, subjective intent

to hinder, delay or defraud creditors must be demonstrated. There is nothing in this record to indicate even by inference that the transfers alleged were done with the specific intent either to defraud, hinder or delay any specific creditor of the Debtor. The fact that the transfers indirectly might have caused ultimately a delay in the creditors' efforts to enforce their claims against the Debtor is of no consequence. Thus, the sole remaining question in this matter is whether the transfers were effected with the requisite specific intent required by § 727(a)(2)(A). This Court is satisfied that an objection to discharge under § 727(a)(2)(A) based on a general charge of dishonest behavior, without more, is not sufficient to warrant a denial of discharge.

■ Even though a Debtor does not act with fraudulent intent, he may nevertheless be denied a discharge in bankruptcy where he failed to keep records from which his financial condition could be ascertained. As noted earlier the Debtor's discharge may be denied under that section where:

"the debtor has concealed, destroyed ... or failed to keep or preserve any recorded information, including books, documents, records or papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

Although the Debtor did not keep a personal general ledger or any other method of accounting for the receipts and disbursements of the garage sale, the antique gun sale, and his personal jewelry sale, he did maintain record of his checking account. Conceivably a Debtor such as the one in this case, who has assets of such magnitude would keep more detailed records and ledgers of transactions involving these assets. However, this Court is satisfied that the Debtor, as an individual, was not under any duty to keep any more detailed records than that of any other individual taxpayer. Therefore, this Court is satisfied that the Debtor's checking account record is sufficient for the ascertainment of his financial

condition and consequently a denial of discharge under § 727(a)(3) will not lie.

■ It is this Court's opinion that the sole tangible basis for a denial of discharge is the Debtor's failure to satisfactorily explain the loss of his assets. As the Court in *Chalik*, supra, noted (*citing In Re Reed*), 700 F.2d 986 (5th Cir.1983):

> "to be satisfying, an explanation must convince the Judge. (citations omitted) Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." 748 F.2d 616, 619 (11th Cir.1984)

The only explanation offered at trial by the Debtor was that the cash and the proceeds of the unsubstantiated sales of his assets were gambled away. There was no documentation, corroboration or substantiation of the sales nor the disposition of the proceeds of the sales. The many cases and authorities uniformly hold that a Debtor's explanation that the diminution of his assets were a result of unsubstantiated gambling losses is an unsatisfactory explanation. *See In the Matter of Simone*, 68 B.R. 475, 477 (Bankr.W.D.Mo.1983); *Matter of Reed*, 700 F.2d 986, 992 (5th Cir. 1983); *In re Yokley*, 61 B.R. 198 (Bankr.S. D.Ky.1986). In this instance the Debtor's explanation is also insufficient. Therefore, denial of Debtor's discharge is warranted on this ground.

Based on the foregoing, this Court is satisfied that the Plaintiffs are entitled to Judgment denying Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

A separate Final Judgment will be entered in accordance with the foregoing.