**In re Marguerite McMAHON, Debtor.**

**Michael F. DIGNAM, as Personal Representative of the Estate of James Spall, Deceased Plaintiff,**

v.

**Marguerite McMAHON, Defendant.**

Bankruptcy No. 89–5833–9P7.
Adv. No. 89–596.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

July 19, 1990.

Jeffrey W. Leasure, Fort Myers, Fla., for plaintiff.

Phillip J. Jones, Punta Gorda, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is an adversary proceeding filed by Michael F. Dignam (Plaintiff) as Personal Representative of the Estate of James Spall, deceased. The Complaint filed by the Plaintiff consists of six counts and the claims, as plead, are as follows:

In Count I, the Plaintiff seeks a determination that a debt owed by the Debtor to the Plaintiff in the amount of $148,907.48 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). In support of this claim, it is alleged in Count I that by virtue of a power of attorney, the Debtor as attorney-in-fact owed a fiduciary duty to the probate estate of James Spall to protect and conserve the properties of the estate of the deceased, and that the Debtor violated this duty by exceeding her authority by using estate funds for her own benefit without any right or justification. The Plaintiff contends that as a result, the Debtor fraudulently obtained the aggregate sum of $148,-907.48 which was property of the probate estate of James Spall and spent and failed to account for same.

The claim in Count II of the Complaint is based on 11 U.S.C. § 727(a)(2) and alleges that the Debtor transferred to her husband her interest in a 1988 Cadillac El Dorado automobile owned by herself and her husband jointly with the specific intent to defraud, hinder or delay the Plaintiff in his attempts to recover property of the probate estate from the Debtor.

In Count III, the Plaintiff requests a denial of the Debtor's discharge for her alleged failure to keep or preserve adequate books and records pursuant to 11 U.S.C. § 727(a)(3).

In Count IV of the Complaint, the Plaintiff alleges that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4) on the grounds that the Debtor knowingly and fraudulently made a false

oath when she executed her bankruptcy petition and schedules.

In Count V of the Complaint, the Plaintiff alleges that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(5) for her failure to satisfactorily explain the loss of certain assets.

In Count VI of the Complaint, the Plaintiff seeks to impose a constructive trust on the Debtor's homestead real property located in Charlotte County, Florida. The Plaintiff alleges that the Debtor used funds which were property of the estate of James Spall to satisfy a mortgage on the Debtor's homestead.

The facts relevant and germane to a resolution of this controversy as established at the final evidentiary hearing are as follows:

In May 1987, the Debtor's parents, Minnie and James Spall, gave a power of attorney to the Debtor. At the same time, Mr. and Mrs. Spall transferred their interest in their homestead real estate to the Debtor. Sometime in June 1987, the Debtor sold the real property and obtained approximately $45,000.00 from proceeds at the closing. On July 29, 1987, the Debtor used her power of attorney and transferred the proceeds obtained from the real estate sale, and the proceeds of other accounts previously held in the name of her parents and established a savings account at First Federal of Charlotte County. The account was a joint account opened in her name and her parents' names. (Plaintiff's Exh. No. 5). On August 3, 1987, her mother, Minnie Spall, died, and on September 5, 1987, her father, James Spall, died. In due course, the Plaintiff was appointed as the Personal Representative of the Estate of James Spall.

On September 24, 1987, the Debtor transferred the funds in the savings account into an account jointly maintained by her and her husband, Joseph T. McMahon. (Plaintiff's Exh. No. 6). On the same day, the Debtor purchased a cashier's check drawn on this account and delivered the same to Coast Federal Savings and Loan Association for payment of the outstanding balance on the mortgage encumbering the homestead owned by her and by her husband as tenants by the entireties.

Thereafter, the Debtor opened and closed various checking, savings and certificate of deposit accounts at several Charlotte County financial institutions. In addition, she also opened at least four money market accounts with First Interstate Bank, Chase Manhattan Bank and A.G. Edwards & Sons, Inc. (Plaintiff's Exh. Nos. 5, 6, 7, 8, 9, 10, 11, 12, 16 and 17). In March 1989, the Debtor transferred to her husband her one-half interest in the 1988 Cadillac El Dorado automobile which had been purchased jointly by the Debtor and her husband for the sum of $31,767.65 in August 1988. (Plaintiff's Exh. No. 19).

In March 1989, the Debtor closed the joint account held with her husband at A.G. Edwards & Sons, Inc., and opened a separate account solely in the name of her husband, using the remaining funds in the First Federal of Charlotte County savings account. Between September 24, 1987, and August 18, 1989, the Debtor claims to have spent all of the funds which were the sole assets of the probate estate of James Spall. When the Plaintiff sought without success an accounting of the funds obtained by the Debtor from the probate estate of her father, he filed a suit in the Circuit Court in and for Lee County, Florida.

On April 3, 1989, the Circuit Court found that the Debtor had exceeded her authority as agent for James Spall by use of the power of attorney and that the funds withdrawn from the savings account at First Federal Savings and Loan of Charlotte County on September 24, 1987, were property of the estate of James Spall. The Court ordered the Debtor to deliver all of the funds found to have been improperly obtained to the Plaintiff within ten days. (Plaintiff's Exh. No. 13).

On June 29, 1989, the Debtor and her husband obtained a loan from Citizens & Southern National Bank of Florida in the principal amount of $12,000.00. (Plaintiff's Exh. No. 20). The 1988 Cadillac El Dorado automobile was pledged as collateral for this loan. According to the Debtor, $6,000.00 of the loan proceeds were used to

finance a gambling junket to Las Vegas, Nevada. The remaining $6,000.00 from the loan were deposited into a checking account at Citizens & Southern National Bank solely in the name of the Debtor's husband. The Debtor and her husband have admitted that the loan proceeds were deposited into the checking account solely in Mr. McMahon's name to protect those funds from the Plaintiff's efforts to obtain the funds for the probate estate. The Debtor has been unable to provide a detailed accounting for these loan proceeds or for the funds deposited in the various other bank accounts.

On August 18, 1989, the Debtor filed her voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. It is undisputed that her statement of financial affairs failed to disclose the following:

1) At least eleven checking, savings, money market, and certificate of deposit accounts with various financial institutions. (Plaintiff's Exh. No. 1);

2) The receipt of interest income from Chase Manhattan Bank, Barnett Bank, John Hancock, First Interstate Bank, A.G. Edwards & Sons, Inc., and First Federal of Charlotte County;

3) The purchase by the Debtor and her husband of the Kidron Avenue duplex real property in February 1989, and the receipt of rental income from this property. (Plaintiff's Exh. No. 1);

4) Gambling losses of at least $25,500.00 between October 31, 1988, and August 18, 1989. (Plaintiff's Exh. No. 1);

5) The transfer of a 1987 Cadillac Coupe DeVille as payment toward the purchase of the 1988 Cadillac El Dorado and transfer of a security interest to Citizens & Southern National Bank of Florida on the 1988 Cadillac El Dorado. (Plaintiff's Exh. No. 20);

6) The granting of a mortgage to Murdock Savings Bank on February 23, 1989. (Plaintiff's Exh. No. 21);

7) The Debtor's transfer of her one-half interest in the 1988 Cadillac El Dorado to her husband. (Plaintiff's Exh. No. 1);

8) The retention and payment of $3,000.00 to Darryl C. Casanueva, an attorney who represented the Debtor in the probate court litigation. (Plaintiff's Exh. Nos. 1 and 18).

To contradict the Plaintiff's allegations, it is the Debtor's contention that the diminution of assets was a result of gambling losses on trips to Las Vegas, Reno, Atlantic City, and the Bahamas. The Debtor has admitted that she has no records to substantiate any alleged gambling losses and that she has no idea how much money she lost. Further, the Debtor has failed to show either gambling winnings or losses on her tax returns for the years 1987 and 1988. (Plaintiff's Exh. Nos. 14 and 15). It is interesting to note that the Debtor claimed her husband's "profession" to be the development of gambling systems which required the expenditure of large sums of money gambling in order to test the systems. While this Court will not comment on Mr. McMahon's success at developing these systems, which apparently was not outstanding, even if one believes this explanation, it is evident that the Debtor would not be before this Court today if the systems were viable.

It should be noted at the outset that as the Bankruptcy Code is remedial in nature, § 727 and § 523 must be construed liberally in favor of debtors and strictly against creditors. *In re Mart*, 87 B.R. 206 (Bkrtcy.S.D.Fla.1988); *In re Greenwalt*, 48 B.R. 804 (Bkrtcy.D.Colo.1985). Under § 727 and § 523 of the Bankruptcy Code, the burden is on the objecting party to prove that the Debtor should be denied her discharge by way of clear and convincing evidence. *In re Cutignola*, 87 B.R. 702, 706 (Bkrtcy.M.D.Fla.1988); *In re Bernstein*, 78 B.R. 619 (S.D.Fla.1987); *In re Barney*, 86 B.R. 105 (Bkrtcy.N.D.Ohio 1987).

There is conflict among the various circuits regarding the appropriate standard of proof—either "clear and convincing" or "preponderance of the evidence"—to apply in actions under § 523 and § 727, and the United States Supreme Court has granted certiorari to resolve this dispute, at least as to proving fraud under § 523(a). *Grogan v. Garner*, 881 F.2d 579 (8th Cir.1989), *cert.*

*granted,* —— U.S. ——, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990). In this circuit, however, it is well established that the "clear and convincing" standard is appropriate. Be that as it may, under *either* standard of proof, this Court is satisfied that the Plaintiff has sustained his burden under Counts II, IV and V of the Complaint.

■ Under 11 U.S.C. § 727(a)(2)(A), a debtor's discharge may be denied where: the debtor with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

In order to prevail on Count II of the Complaint, the Plaintiff must therefore prove four elements: 1) that a transfer occurred; 2) that the property transferred was property of the Debtor; 3) that the transfer occurred within one year of the Petition; and 4) that at the time of the transfer, the Debtor possessed the requisite intent to hinder, delay or defraud a creditor. *In re Rowe,* 81 B.R. 653 (Bkrtcy. M.D.Fla.1987). The law is well settled that the intent must be actual fraudulent intent. *Id.,* at 657; 4 *Collier on Bankruptcy,* § 727.02[3] (15th ed. 1984).

The Plaintiff has proved that the Debtor transferred her interest in the 1988 Cadillac El Dorado automobile sometime in March 1989. At the time of the transfer, she was a one-half owner of the automobile. The Plaintiff proved that the transfer occurred in March 1989, which is within one year of August 18, 1989, the date of filing of the bankruptcy Petition. Finally, the Debtor admitted that she actually intended to hinder, delay or defraud the Plaintiff and his efforts to recover property of the probate estate. The Debtor also admitted that the closing of the A.G. Edwards account in March 1989, the opening of an account in the name of her husband using the remainder of the savings account proceeds, and the depositing of $6,000.00 of the C & S National Bank loan proceeds into an account solely in the name of her husband were to protect those funds from the Plaintiff. Thus, the Plaintiff has met his burden of proof with respect to Count II and the discharge of the Debtor should be denied.

■ Likewise, the Debtor's discharge should be denied as the Plaintiff has met his burden of proof under Count V of the Complaint. Count V seeks denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5) for failure to explain satisfactorily a loss of assets or a deficiency of assets to meet the Debtor's liabilities. As has been noted many times before:

to be satisfying, an explanation must convince the Judge. (citations omitted). Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory.

*In re Chalik,* 748 F.2d 616, 619 (11th Cir. 1984); *In re Rowe, supra,* 81 B.R. at 658.

The only explanation offered at trial by the Debtor was that at least $25,500.00 of cash and the proceeds of the First Federal of Charlotte County account were lost gambling between October 31, 1988, and August 19, 1989. There was no documentation, corroboration or substantiation of these alleged gambling losses. In light of the many cases holding that a debtor's explanation that the diminution of his assets was a result of unsubstantiated gambling losses is unsatisfactory, *see In re Chalik, supra,* 748 F.2d at 616 (11th Cir. 1984); *In re Reed,* 700 F.2d 986 (5th Cir. 1983); *In re Yokley,* 61 B.R. 198 (Bkrtcy. W.D.Ky.1986); *In re Simone,* 68 B.R. 475 (Bkrtcy.W.D.Mo.1983), the Plaintiff has sustained its burden under this count of the Complaint. The Debtor's unsubstantiated explanation of the loss of her assets or the deficiency of her assets to meet her liabilities is clearly insufficient and far from satisfactory.

■ Next, the Plaintiff seeks a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4), alleging the Debtor knowingly and fraudulently made false oaths in the filing of her bankruptcy sched-

ules by omitting checking accounts, rental receipts, and cash on hand. The evidence did establish that a number of omissions from the Debtor's bankruptcy schedules existed—the transfer of the Cadillac into her husband's name as stated above, the omission of two bank accounts which she had within the two years prior to her filing of the bankruptcy Petition, the failure to set forth the receipt of rental income from a duplex, and the engagement of the services of another attorney within the year preceding the filing of the Petition.

The Debtor in this case does not dispute the numerous omissions of these matters in her schedules but contends these omissions were revealed at the meeting of creditors, therefore, the original omissions lost their legal significance. Of course, the fact that all of these omissions from the schedules were disclosed at the first meeting of creditors is of no consequence. The false oath, if committed, was committed when the Debtor signed her Statement of Financial Affairs and her Schedules under penalty of perjury and when she failed to disclose numerous material items, and what happened thereafter is immaterial. It is well established that subsequent disclosure does not expunge a prior false oath. *Matter of Kilson,* 83 B.R. 198 (Bkrtcy.D.Conn.1988).

■ As to the remaining count asserted under 11 U.S.C. § 727, the Plaintiff did not meet his burden of proof. First, courts have consistently held that when challenging a debtor's right to a discharge pursuant to § 727(a)(3), the burden is on the Plaintiff to show that the Debtor's records are inadequate and that the adequacy of those records depends largely on the debtor's present financial condition and transactions. *In re Reitz,* 69 B.R. 192 (Bkrtcy.N.D.Ill.1986). An individual debtor has no more of a duty to keep detailed records than that of any typical individual taxpayer. *In re Rowe, supra,* 81 B.R. 653, at 657. In this case, the Debtor did not own or operate any business. She was a housewife and worked as an employee of The Diet Center in Port Charlotte prior to the filing of her bankruptcy Petition. Further, the unsecured claims against the Debtor

are relatively small, and the Debtor's financial condition reflects an absence of any involvement in complex business transactions.

In sum, the Plaintiff has failed to establish facts which would lead this Court to conclude that the Debtor failed to keep adequate and sufficient books or records. Therefore, Count III of the Complaint should be dismissed.

■ Having concluded that the Debtor is not entitled to a discharge, ordinarily it would not be necessary to consider whether the Plaintiff has met his burden to establish the claim set forth in Count I, the claim that amounts owing by the Debtor to the Plaintiff are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). However, for the sake of completeness, this Court finds that the Plaintiff can not prevail on the claims set forth in this Count. In order to prevail under 11 U.S.C. § 523(a)(4), the Plaintiff must prove not only that the wrongful act gave rise to personal liability, but that the Debtor was acting in a fiduciary capacity and breached same. The question of whether a fiduciary relationship exists is a question to be determined by federal bankruptcy law and not state law. *In re Elliott,* 66 B.R. 466 (Bkrtcy.S.D.Fla.1986). This Court has consistently ruled that, in order to meet the requirements of § 523(a)(4), the Debtor must be acting under an express or technical trust. *In re Campbell,* 79 B.R. 496 (Bkrtcy.M.D.Fla. 1986).

In a case almost identical to the one at bar, the Ninth Circuit Bankruptcy Appellate Panel ruled that no fiduciary relationship existed. In *In re Cooper,* 30 B.R. 484 (9th Cir. BAP 1982), the debtor held a power of attorney for her grandmother and opened at least two bank accounts with the grandmother's money in the debtor's and grandmother's names. Upon the grandmother's death, the debtor transferred the money in these accounts into an account in her own name. While the state court held that a fiduciary relationship existed which was breached by placing the funds in her own name, the Bankruptcy Appellate Panel ruled that the power of attorney terminated by operation of law upon the grand-

mother's death and that no express trust relationship existed between the Debtor and the estate of her grandmother except for a trust imposed by operation of law. *In re Cooper, supra.*

Likewise, this Court has ruled that the imposition of a constructive trust even *ex maleficio* does not give rise to a fiduciary relationship as required by § 523(a)(4) of the Bankruptcy Code. *In re Ruskin,* 34 B.R. 12 (Bkrtcy.M.D.Fla.1983). Based on the foregoing, this Court is satisfied that the Debtor never had any express or technical trust or fiduciary relationship as defined by federal bankruptcy law with the Plaintiff after the death of her parents. The agency relationship she had pursuant to the power of attorney with her parents terminated by operation of law upon their deaths. Therefore, any trust or fiduciary relationship was no longer in existence at the time of the transfers under consideration. Therefore, the claim as plead in Count I cannot be sustained and should be dismissed.

Finally, regarding Count VI, the Court is satisfied that judgment should be entered in favor of the Plaintiff. In order to impose a constructive trust on real property, the Plaintiff must prove that funds of the Plaintiff were used to improve or otherwise enhance the value of a res owned by Debtor and that the funds are traceable by the Plaintiff into the specific res upon which the Plaintiff seeks to impose the constructive trust. *Doing v. Riley,* 176 F.2d 449 (5th Cir.1949).

The Plaintiff has proven that the sum of $30,074.04, used by the Debtor to satisfy the mortgage on the Debtor's homestead real property, was directly traceable to the property of the probate estate of James Spall. Therefore, the Plaintiff is entitled to prevail in its claim in Count VI against the Debtor and impose a constructive trust on the homestead real property to the extent of $30,074.04.

A separate Final Judgment shall be entered in accordance with the foregoing.