In re Johanna CAPARELLI, Debtor.

Nettie SECUNDY and Netties Kitchen, Inc., Plaintiff,

v.

Johanna CAPARELLI, Defendant.

Bankruptcy No. 91–21062–BKC–SMW. Adv. No. 91–0615–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 23, 1991.

Mark L. Gaeta, Fort Lauderdale, Fla., for plaintiff.

Peter J. Snyder, Boca Raton, Fla., for defendant.

Lucy DiBraccio, Hollywood, Fla., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE having come before the Court on August 21, 1991, upon the complaint of Nettie Secundy and Netties Kitchen, Inc. (the "creditors") against Johanna Caparelli (the "debtor"), pursuant to 11 U.S.C. § 727(a)(2)(A), § 727(a)(3), § 727(a)(4)(A) and § 523(a)(2)(B), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the Following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 157(a), (b) and § 1334(b) and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(J).

In November of 1989, the debtor purchased from the creditor, Nettie Secundy, a business commonly referred to as Netties Kitchen, Inc. Because $40,000.00 of the purchase price was financed by the creditors, the debtor submitted a Financial Information Disclosure wherein the debtor listed all of her assets and liabilities. The financial information was provided by the debtor to a broker who prepared and drafted the form which was then signed by the debtor. In the Financial Information the debtor disclosed that she had $207,000.00 in total assets, and only $586.00 in total liabili-

ties. To secure the financing of the purchase, the debtor granted the creditors a security interest in all of the inventory, goods and accounts of the business.

The business was not successful and the debtor subsequently defaulted on her obligation to the creditors. In December of 1990, the creditors filed suit against the debtor in the Seventeenth Judicial Circuit, Broward County, Florida. The debtor did not answer the creditors' complaint and on February 11, 1991 judgment was entered against the debtor and Caps Kitchen, Inc., jointly and severally. The judgment was amended twice, and the Second Amended Final Judgment was entered against the debtor and Caps Kitchen, Inc., jointly and severally, on February 22, 1991 in the amount of $46,726.18, $1,000.00 in attorney's fees, and $154.00 in cost, for a total of $47,880.18.

The debtor made various transfers following the failure of the business. The debtor then sold the inventory and merchandise of the business which was subject to the security interest of the creditors and received $8,000.00 from the sale. In October of 1990, the debtor repaid a $40,000.00 loan owed to Bank Atlantic which the debtor had obtained for the benefit a third party. The debtor also paid off the outstanding balance on her automobile loan in the approximate amount of $17,700.00. In January of 1991, the debtor took what purported to be a $10,000.00 loan from Ms. Phyllis Wolf, a close personal friend of the debtor. The loan was secured by a security interest granted to Ms. Wolf by the debtor in the debtor's 1989 Mazda automobile. Although the debtor asserts that the amount of the loan was $10,000.00, the terms of the note evidence an indebtedness of only $8,000.00. Finally, in February 1991, the debtor transferred $10,000.00 into an annuity with Zurich American Life Insurance Company. The debtor receives $198.00 per month from the annuity.

On April 2, 1991, the debtor filed her Chapter 7 petition in this Court. The creditors then commenced this adversary proceeding seeking to deny the debtor her discharge or, alternatively, seeking to ex- cept the state court judgment from discharge. In Count I of the complaint, the creditors seek to deny the debtor her discharge pursuant to § 727(a)(2)(A) alleging that the transfers made by the debtor following the failure of the business were made with the intent to hinder, delay and defraud the creditors.

Under 11 U.S.C. § 727(a)(2)(A), a debtor is entitled to a discharge unless "the debtor with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the debtor, within one year before the date of the filing of the petition." In order to sustain an objection to discharge, a creditor must prove that:

1. a transfer, removal, destruction, mutilation, or concealment of property has occurred;

2. the property was property of the debtor;

3. the act complained of was done within one year of the filing of the bankruptcy petition; and

4. the act was done with actual intent to hinder, delay or defraud a creditor.

*In re McNamara*, 89 B.R. 648 (Bankr. N.D.Ohio 1988).

The intent to hinder, delay or defraud a creditor necessary to deny a debtor his discharge may be based upon circumstantial evidence or inferences drawn from course of conduct. *In re Kaiser*, 94 B.R. 779 (Bankr.S.D.Fla.1988); *In re Topping*, 84 B.R. 840 (Bankr.M.D.Fla.1988). Because a debtor's fraudulent intent is rarely susceptible to direct proof, courts have developed "badges of fraud" to establish the requisite actual intent to defraud. *In re Kaiser*, 722 F.2d 1574, 1582 (2nd Cir.1983). These indicia of fraud include:

1. the lack or inadequacy of consideration;

2. the family, friendship or close associate relationship between the parties;

3. the retention of possession, benefit or use of the property in question;

4. the financial condition of the party sought to be charged both before and after the transaction;

5. the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

6. the general chronology of the events and transactions under inquiry.

*In re Kaiser,* 722 F.2d 1574, 1582–1583 (2nd Cir.1983); *In re McNamara,* 89 B.R. 648, 651 (Bankr.N.D.Ohio 1988).

 This Court is attentive to the recognized right of a debtor to engage in prebankruptcy planning. The Court is also mindful that the mere transfer of assets from non-exempt to exempt status, of itself, is not per se fraudulent. *In re Levine,* 40 B.R. 76 (Bankr.S.D.Fla.1984). However, several of the badges of fraud established by the court as evidence of a debtor's fraudulent intent are evident in this case.

The evidence indicates that the debtor engaged in a course of conduct whereby she transferred or encumbered non-exempt assets following the failure of the business. The debtor sold the merchandise and inventory which she had pledged as collateral to the creditors and, as testified to by the debtor, she received approximately $8,000.00 from the sale of these items. After paying for the cost of the sale, the debtor applied the remaining funds to her own use. The debtor then repaid a $40,000.00 obligation to Bank Atlantic which the debtor had incurred for the benefit of a third party. The debtor also satisfied her financial obligation in the approximate amount of $17,700.00 to the lender who had financed the purchase of her automobile. Shortly thereafter, the debtor again encumbered the automobile when she granted a security interest to her close friend Ms. Wolf to secure the repayment of a loan from Ms. Wolf, allegedly in the amount of $10,000.00.

With respect to the purported loan from Ms. Wolf, the only credible evidence presented on this issue was the note executed by the debtor. The note, which represents an indebtedness of only $8,000.00, states that the loan is interest free. The debtor's signature on the instrument is notarized by Terry L. Fuller, Ms. Wolf's daughter-in-law. Despite the value placed on the note by the parties, the debtor asserted that Ms. Wolf had loaned her $10,000.00 in cash. Ms. Wolf testified that the monies for the loan had not come from a bank account. Rather, Ms. Wolf indicated that she had saved the monies at home and gave the debtor the cash when the debtor informed her she was having health problems as well as financial difficulties. The debtor failed to introduce any additional evidence, beyond her assertions and those of Ms. Wolf, to indicate to the Court that the debtor actually borrowed, and Ms. Wolf had actually loaned, the $10,000.00. In fact, Ms. Wolf testified that the debtor has never made any recompense to her in repayment of the loan. The Court is not persuaded that the debtor truly borrowed the $10,000.00 from Ms. Wolf. Therefore, the Court concludes that the debtor granted the security interest in her automobile to Ms. Wolf without receiving bona fide consideration.

The Court also concludes that the purchase of the annuity on February 9, 1991 was fraudulent as against the creditors. The debtor purchased the annuity a mere two days before the original judgment was entered against her in the state court action. Although the debtor did not appear in that action, the debtor acknowledged that she had received service of process and was, therefore, aware of the claim asserted by the creditors. Combined with the circumstances surrounding the other transfers, these facts lead the Court to conclude that the annuity was purchased with the intent to hinder, delay and defraud the creditors. Therefore, the Court finds that the creditors have established the requisite elements of 11 U.S.C. § 727(a)(2)(A) and the debtor shall be denied her discharge.

 The Court also finds that the debtor has failed to keep and preserve her financial records pursuant to § 727(a)(3) as

alleged by the creditors in Count II of their complaint. Under 11 U.S.C. § 727(a)(3) a debtor is granted a discharge unless "the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances ..." An individual debtor has no more of a duty to keep detailed records than that of any typical individual taxpayer. *In re Rowe,* 81 B.R. 653 (Bankr.M.D.Fla.1987). In determining whether the debtor has destroyed or failed to preserve proper records, the statute is to be liberally construed in favor of the debtor. *In re Zaidan,* 86 B.R. 296 (Bankr.S.D.Fla.1988). The burden is on the party objecting to discharge to prove by clear and convincing evidence that the debtor should be denied her discharge. *In re McMahon,* 116 B.R. 857 (Bankr.M.D.Fla. 1990). In order for a party objecting to discharge to meet his burden of proof, the evidence must be such that, when considered in light of all the facts, it leads the court to the conclusion that the debtor has violated the spirit of the bankruptcy laws and therefore should be denied the privilege of eliminating the legal obligation of his debts. *In re Mart,* 87 B.R. 206, 209 (Bankr.S.D.Fla.1988).

By order dated April 8, 1991, this Court directed the debtor to appear at a rule 2004 examination to be conducted by the attorney for the creditors. The order also directed the debtor to produce certain documents at the examination, including all bank statements and canceled checks regarding all the bank accounts of the debtor. The debtor failed to produce her bank records at the examination. Subsequently,

the debtor produced her bank records and statements for the period of September 1989 through June 1990. However, the debtor failed to produce any documents for the period of July 1990 through the date of the filing of the petition, stating that she no longer had the documents in her possession. The documents would tend to show what transfers were made by the debtor in order to satisfy her obligations to Bank Atlantic and to the lender on her automobile. It is surprising that the debtor has preserved her older financial records yet has failed to preserve or account for her financial records for the period immediately prior to the filing of the petition which are, logically, of a more recent vintage. This type of "selective" production runs counter to the disclosure requirements imposed upon a debtor by the Bankruptcy Code. The Court concludes that the creditors have satisfied the requirements of 11 U.S.C. § 727(a)(3), and determines that the creditors objection to the discharge of the debtor pursuant to § 727(a)(3) is sustained.

Because the Court has determined that the debtor shall be denied her discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and § 727(a)(3), the Court does not address and makes no findings with respect to the creditors allegations under 11 U.S.C. § 727(a)(4) and § 523(a)(2)(B).

A separate Final Judgment of even date has been entered in conformity with the Findings of Fact and Conclusions of Law.