**In re Kenneth R. McCAFFREY and Cathy A. McCaffrey, Debtors.**

**Edward G. MARSHALL and Nancy H. Marshall, M.D., Plaintiffs,**

v.

**Kenneth R. McCAFFREY, Defendant.**

**Bankruptcy No. 96–52480–WS.
Adversary No. 96–5061.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

*Oct. 3, 1997.*

Michael D. Lieberman, Southfield, MI, for Plaintiffs.

Paul H. Steinberg, Southfield, MI, for Defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiffs in this adversary proceeding are creditors of debtor/defendant. Their complaint asserts claims against defendant based on 11 U.S.C. § 523(a)(2), (4), and (6). In addition, objections to discharge pursuant to 11 U.S.C. § 727 are also asserted. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). The proceeding came on for a bench trial at the conclusion of which the court reserved decision. The only witnesses testifying at the trial were Edward G. Marshall on behalf of plaintiffs, and the defendant himself, who was called on cross-examination by the plaintiff, in addition to testifying in his own case.

We commence our statement of our findings of fact by setting forth the Stipulation of Facts which the parties agreed to in their Joint Final Pretrial Order:

## IV STIPULATION OF FACTS

The following facts are not in dispute:

1. Kenneth Richard McCaffrey ("Defendant") and his wife, Cathy A. McCaffrey (collectively, "Debtors") filed their Petition for Relief under Chapter 7 on September 19, 1996.

2. Prior to April 8, 1996, Defendant was the president, sole shareholder and director of a corporation known as Celebrity Lanes and Lounge, Inc. ("Celebrity"). Celebrity had its business address located at 1641 Garfield, Port Huron, Michigan 48060.

3. Defendant was an "insider" of Celebrity, and Celebrity was an "insider" of Defendant, as that term is defined in 11 U.S.C. § 101(31).

4. In the middle to late 1994, Celebrity was experiencing financial difficulties in its business operations.

5. Defendant sought a corporate loan from Plaintiffs for the stated corporate purposes of consolidating corporate debt, paying off outstanding federal and state corporate taxes and making certain repairs and/or improvements to the corporation's leasehold premises.

6. Defendant, on behalf of Celebrity, and Edward Marshall, on behalf of himself and his wife, engaged in negotiations.

7. Following negotiations, defendant and Plaintiffs reached an agreement for a loan which, initially, was in the amount of $25,000.00.

8. Subsequently, Plaintiffs agreed to loan additional funds to Celebrity. On or about November 29, and November 30, 1994, Plaintiffs issued checks to Celebrity which increased the total principal amount of the loan to $250,000.00.

9. Repayment of the loan was to be secured by the assets of Celebrity and by a mortgage on the Debtors' land contract vendee interest on their then personal residence.

10. On October 23, 1995, Celebrity filed a Chapter 11 Petition in this Court, Case No. 95–51453–S.

11. During the Chapter 11 proceedings, Defendant testified, under oath, at a Section 341 Meeting of Creditors which took place on December 21, 1995 (the "Meeting of Creditors") and a Bankruptcy Rule 2004 Examination conducted on January 12, 1996 (the "2004 Exam").

12. At each of these proceedings, Defendant admitted that some of the loan proceeds were taken by him, individually, and used for personal gambling purposes at the casinos in Windsor. Defendant also admitted that he had a gambling problem.

The foregoing Stipulation was supplemented by the testimony at the trial, and we further find the following facts. Plaintiff Edward G. Marshall, prior to meeting defendant late in 1992 or early 1993, owned a bowling alley. (Hereafter when the term "plaintiff" is used in the singular, it will be understood that we are referring to Edward G. Marshall. He had an active role in the transactions between plaintiffs and defendant, while the role of co-plaintiff Nancy H. Marshall was passive.) Plaintiff met defendant at a meeting of bowling lane proprietors. By check dated July 12, 1993, plaintiff lent defendant $25,000.00. Prior to this date, defendant approached plaintiff to request a loan. Defendant had been at this time experiencing financial difficulties at Celebrity. As security for the loan, defendant gave plaintiff a security interest in his residence. (There was sufficient equity in the residence adequately to secure the loan.) The loan was made to defendant by plaintiff's corporation. Some payments were made on the loan by defendant. Subsequently, defendant asked plaintiff to increase the loan to $250,000.00. On November 29, 1994, plaintiffs on their personal account wrote a check to Celebrity Lanes in the amount of $210,000.00. On November 30, 1994, plaintiff Nancy H. Marshall wrote a check made payable to Celebrity in the amount of $12,693.00. At that juncture, the indebtedness of Celebrity to plaintiff amounted to $250,000.00. In order to obtain the funds to lend to Celebrity, the plaintiffs jointly secured a loan on their resi-

dence. Plaintiff testified that his reason for making the loan to defendant was as an investment with the favorable terms of seven points over prime. At the time of the loan, November 29, 1994, defendant executed a promissory note to plaintiff Nancy H. Marshall only. The loan was to be paid back in five years. The promissory note provided that the note was secured by an interest "upon all equipment and fixtures of the Celebrity Lanes and Lounge, Inc., and by a mortgage upon 840 Illinois, Marysville, Michigan, 48040." At the same time, defendant signed a security agreement in favor of plaintiff Nancy H. Marshall specifying the equipment and fixtures of Celebrity which were to comprise the collateral for the transaction. A financing statement was executed by defendant reciting the collateral, and stating that the secured party was Nancy H. Marshall. The financing statement, however, was never filed. The documents here involved were prepared by a Mr. Mitchell, defendant's attorney. Plaintiff had had a long relationship with Mitchell. At the time of the transaction, plaintiff, also an attorney, was involved in preparation for an arduous trial and left the details to Mitchell, including the task of recording the financing statement.

Plaintiff testified that at the time of the original borrowing, defendant said that he wanted the loan for corporate purposes, to help get through the summer. When defendant subsequently asked that the loan be increased, plaintiff testified that defendant said that he would use the additional loan to consolidate his debts to pay off the small creditors of Celebrity. Defendant, on the other hand, testified that while he did indicate that he expected to use the proceeds for payment of creditors, there were no restrictions contained in the documentation as to the use which defendant could make of the proceeds of the loan.

As stated in the Stipulation of Facts, defendant's business, Celebrity Lanes, filed a Chapter 11 petition October 23, 1995. A trustee was installed in the Chapter 11 case within a few weeks of the filing of the case. The Chapter 11 case then was converted to Chapter 7 on April 8, 1996. The assets of Celebrity Lanes were sold by the Chapter 7 trustee, and plaintiff bought them for $120,000.00. In addition, plaintiff foreclosed on defendant's residence, realizing some $18,000.00 net from this action.

■ With respect to dischargeability, plaintiffs assert that they are entitled to relief on the basis of § 523(a)(2), (4), and (6). We dispense summarily with the § 523(a)(4) and § 523(a)(6) bases, and hold that plaintiffs do not have standing to assert such claims. "Standing is a jurisdictional requirement which is open to review at all stages of the litigation. A federal court has a duty to determine a party's standing whether or not the issue has been raised by any of the litigants." *In re Cross*, 203 B.R. 456, 457 (Bankr.C.D.Cal.1996) (citations omitted). The bases of § 523(a)(4) and § 523(a)(6) claims by plaintiffs are violations of duties owed by defendant to Celebrity, his corporation. That is, plaintiffs contend that defendant owed a fiduciary duty to Celebrity, and defendant misused funds of the corporation so that there was a defalcation. This gives rise, say plaintiffs, to the § 523(a)(4) claim. As to § 523(a)(6), plaintiffs assert that defendant converted corporate funds.

■ With respect to the § 523(a)(4) claim, any fiduciary capacity existed only between defendant and Celebrity. There is no basis in the evidence for an assertion of a fiduciary relationship between plaintiffs and defendant directly. It follows then that if there was any violation of § 523(a)(4), the injury would have been to Celebrity. Plaintiffs do not have standing to assert a § 523(a)(4) claim against this defendant. Any such claim would belong to Celebrity, or, since Celebrity is in bankruptcy, to its trustee. The only basis upon which plaintiffs could pursue the present § 523(a)(4) claim would be as a derivative claim, but plaintiffs are precluded from such action because a creditor does not have standing to assert such a claim. *In re Phillips*, 185 B.R. 121 (Bankr.E.D.N.Y.1995) (plaintiff sues both as creditor and as shareholder, but is allowed damages as creditor only under § 523(a)(2)); *In re Missirlian*, 113 B.R. 129 (Bankr. E.D.N.Y.1990) (plaintiff denied dischargeability relief under § 523(a)(4) against son of

decedent, where plaintiff was creditor of decedent). We hold, therefore, that plaintiff does not have standing to assert a § 523(a)(4) claim against defendant. Even if plaintiff did have standing, however, an essential element of such a claim is absent from the evidence presented by plaintiff. In order to establish a § 523(a)(4) claim, there must be an express, technical trust between the defendant and his corporation, a proposition recently reaffirmed in no uncertain terms in the Sixth Circuit, *In re Garver*, 116 F.3d 176 (6th Cir.1997), and no such relationship existed here.

■ For like reasons as those we have presented above with regard to plaintiffs' standing to pursue a § 523(a)(4) claim against defendant, we hold that plaintiffs have no standing to assert a § 523(a)(6) claim against defendant. The essence of the claim asserted by plaintiffs in this regard is an alleged conversion of property of Celebrity. Again, any injury from the alleged acts is to Celebrity, the corporation, and not directly to plaintiffs, creditors of the corporation, not of debtor.

Plaintiffs' only viable dischargeability claim is based upon § 523(a)(2)(A). In order to make out such a claim, the following must be established:

It is well established that in order to except a debt from discharge under section 523(a)(2)(A) "the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss." *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 852 (6th Cir.1993) (quoting *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986)). Additionally, the proper burden upon Longo "in this quest for nondischargeability was to show proof of McLaren's fraud by a preponderance of the evidence only." *Id.* at 853 (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (overruling *In re*

*Phillips*, 804 F.2d 930 (6th Cir.1986), in that respect)).

*In re McLaren*, 3 F.3d 958, 961 (6th Cir. 1993).

■ Plaintiffs assert that there was a misrepresentation by defendant, when defendant told plaintiffs that he would use the proceeds of the loan to satisfy the claims of creditors of the corporation, Celebrity. Defendant does not deny that he made such a statement to the plaintiffs, and he testified at his Rule 2004 examination that he used a portion of the loan for gambling purposes so there was a misrepresentation. Upon our review of the record, however, we conclude that plaintiffs have failed to prove that the statement was made with intent to deceive. There is no evidence whatever that at the time that he made the statement, defendant did not intend to use it for the purpose he stated. The record shows instead that he did use almost ninety percent of the proceeds of the loan for the stated purpose. The bank statement introduced into evidence by defendant as defendant's Exhibit E establishes that much of the loan was in fact used for such purposes. Consequently, we cannot find from this record that the second element required by *McLaren*, that there was an intent to deceive, is satisfied.

■ Additionally, we do not find that plaintiffs have sustained their burden of proof as to the element of reliance. The misrepresentation upon which plaintiffs base their § 523(a)(2) claim is with respect to how defendant would use the proceeds of the loan in his business. Plaintiff testified that he relied on that representation in making the loan. However, the parties entered into extensive written documentation consisting of a promissory note, mortgage, security agreement, and financing statement in connection with the making of the loan. There is nothing in those documents which imposes any such limitation upon use of the proceeds of the loan. Surely if this were a material matter to plaintiffs, it would have been recited in the promissory note and/or security agreement. What plaintiffs did rely upon was the having of a security interest in the assets of Celebrity. That is clearly recited in the documentation and we hold that it is this

upon which plaintiffs relied in making the loan rather than on any misrepresentation. As did the court in *In re Parsell*, 172 B.R. 226, 232 (Bankr.N.D.Ohio 1994), we find the testimony of plaintiff "incredible" that he relied on defendant's misrepresentation, where clearly the evidence showed that his reliance lay elsewhere. (Nor was plaintiff's credibility enhanced when he testified that he made the loan to Celebrity as an "investment", expecting a good rate of return on it. But the plaintiffs mortgaged their residence to make the loan. This obviously reduced any real rate of return on the loan to Celebrity by an appreciable margin. "Investment" plainly was not plaintiffs' objective.) Both parties relied upon Mitchell, defendant's attorney, to record the financing statement. He did not do so. There is no evidence that this was at the behest of defendant. Indeed, defendant was a layman and of course he would rely upon his attorney to attend to a legal duty such as recording a security document. Plaintiff, an attorney, would realize the utter indispensability of the filing of the financing statement. It seems that he has contributed to his own downfall by a failure to be certain that the necessary recording occurred. *See In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir.1992). In view of all of the foregoing, that plaintiffs have failed to prove the essential intent to deceive and reliance elements of a claim under § 523(a)(2)(A), their claim based on that statutory provision fails.

We next consider plaintiffs' claims for denial of discharge pursuant to § 727(a)(3) and (5). The basis of plaintiffs' claim in this regard is that defendant failed to keep records of his gambling activity. The pertinent statute provides:

### § 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

\* \* \*

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, un-less such act or failure to act was justified under all of the circumstances of the case;

\* \* \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

Initially, we observe that there was some question about defendant's failure to produce the records of Celebrity. Defendant testified that the records of Celebrity, as well as personal records, were at the premises of Celebrity. Defendant testified that the bankruptcy trustee for Celebrity, and the trustee's accountant, prevented defendant from having access to those records, and we believe defendant's testimony. In any case, plaintiff testified that he had adequate records to know the total amount of money that defendant got from Celebrity. Plaintiff therefore has failed to prove any violation of § 727 based on the failure to produce Celebrity records. That leaves then the question of defendant's failure to maintain personal records. Perhaps because the focus of plaintiffs in presenting their case was on the § 523(a)(2) dimension, the presentation of evidence with regard to their § 727 claims is less thorough. Thus, the only evidence in the record regarding defendant's personal records is:

1. In response to the question whether plaintiffs asked for defendant's records, plaintiff testified that he believed that his counsel had done so. The record contains nothing to indicate what the response to any such inquiry was.

2. Defendant testified that he had no records specifically of his gambling debts.

3. In the examination of defendant at the trial, reference was made to p. 44 of the transcript of a F.R.B.P. 2004 examination of defendant, where defendant testified that he had had a checking account, now closed. There is nothing in the trial record to indicate that plaintiff sought to obtain those records or place them in evidence.

 Section 727(a)(5) is activated only where a "loss of assets or deficiency of assets" has been shown. We hold that plaintiffs cannot bar defendant's discharge on the basis of this provision, because plaintiffs have failed to prove that there was a "loss of assets or deficiency of assets." We observe, by the way, that existence of such loss or deficiency is in the usual fact pattern where a debtor asserts that gambling is the explanation of the loss or deficiency, and a failure to keep records results in a denial of discharge. *See, e.g., In re Rowe,* 81 B.R. 653 (Bankr. M.D.Fla.1987).

 Turning to plaintiffs' reliance on § 727(a)(3), we find insufficient ground on the facts before us to warrant denial of defendant's discharge. As was stated by the court in *In re Hirsch,* 36 B.R. 643, 645 (Bankr.S.D.Fla.1984), gamblers do not usually keep records of their gambling activities, and it is of the absence of such records that plaintiffs complain. As was stated by the court in the *Rowe* case, this defendant had no "duty to keep any more detailed records than . . . any other individual taxpayer ." 81 B.R. at 657. In that case the court found that defendant's checking account record was sufficient to support a holding that denial of discharge under § 727(a)(3) was unwarranted. We reach the same conclusion in the present case. All that plaintiffs offer in support of their position is that there were no records of defendant's gambling activities; they do not assert that no other personal records of defendant's financial affairs exist, such as checking account records. Plaintiffs have failed to sustain the burden of proof to make out a claim under § 727(a)(3).

In light of the foregoing, we conclude that the issues in this adversary proceeding should be held in defendant's favor. The complaint will be dismissed.