**BARCLAYS/AMERICAN BUSINESS CREDIT, INC., Plaintiff/Appellee,**

v.

**Edsel ADAMS and Frances T. Adams, Defendants/Appellants.**

Civ. No. 87–2203.
Bankruptcy No. 84–23849.
Adv. No. 85–0357.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 30, 1992.

Order Amending Decision and
Certifying Judgment March 22, 1993.

Guthrie Castle, Jr., Memphis, TN, for plaintiff/appellee.

John D. Horne, Memphis, TN, for defendants/appellants.

## ORDER PARTIALLY AFFIRMING DECISION OF BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS

TODD, District Judge.

On October 9, 1984, Edsel Adams and Frances T. Adams filed an original petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee, Western Division.[1] On May 11, 1985, Plaintiff/Appellee, Barclays/American Business Credit, Inc. ("Barclays") filed an adversary complaint against the Debtors. Barclays sought a denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2)–(7), a determination that the debt owed to it was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) & (4), and a nondischargeable judgment in the amount of $400,000 plus costs. A lengthy trial was

---

1. Adams Plywood, a corporation wholly owned by Edsel Adams, filed a petition under Chapter 11 of the Bankruptcy Code on August 22, 1984.

held, beginning on April 21, 1986. On June 18, 1986, the bankruptcy court issued a memorandum opinion and order denying the Debtors a discharge pursuant to § 727(a)(2); the court found that this determination made it unnecessary to consider the question of nondischargeability under § 523. Judgment was subsequently entered for Barclays on June 27, 1986, including a money judgment in the amount of $731,367.74 plus interest. The Debtors filed a notice of appeal from the order and the judgment on July 7, 1986.

On June 27, 1986, Barclays filed a motion for clarification of the bankruptcy court's memorandum opinion and order. On October 3, 1986, the bankruptcy court issued an order making two additional findings: 1) that pursuant to the security agreement between the parties, the disposition of the Debtors' assets and Barclays' collateral was governed by North Carolina law, and 2) that Barclays' disposed of its collateral in a commercially reasonable manner. The Debtors filed a notice of appeal on October 14, 1986, stating that they were appealing the June 18 order and the June 27 judgment, as amended.

On November 24, 1986, the Debtors filed a motion to reopen the case, for a new trial, and to disqualify the bankruptcy judge on the grounds of personal bias, prejudice, and questionable impartiality. The bankruptcy court denied the motion by order of March 4, 1987.[2] On March 9, 1987, the Debtors filed a notice of appeal from that order.

Appellants raise five issues on appeal:

1) Whether the bankruptcy court erred in denying the Debtors' a discharge pursuant to 11 U.S.C. § 727(a)(2).

2) Whether the bankruptcy court erred in finding that Barclays disposed of its collateral in a commercially reasonable manner.

3) Whether the bankruptcy court erred in awarding Barclays a nondischargeable money judgment in the amount of $731,367.74 plus interest.

4) Whether the amount of the money judgment, including the assessment of legal

fees and expenses, was supported by the proof.

5) Whether the bankruptcy judge should have reopened the case, granted a new trial and disqualified himself on the basis of personal bias, prejudice, or questioned impartiality.

For the reasons set forth below, the decision of the bankruptcy court is partially affirmed, and the case is remanded.

The factual findings of a bankruptcy court should not be overturned on appeal by a district court unless they are clearly erroneous. *In re Southern Industrial Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987); Bankr.Rule 8013. Under this standard, so long as the judge's inferences are reasonable and supported by the evidence, they will not be disturbed. *Southern Industrial*, 809 F.2d at 331. Questions of law are reviewed *de novo*.

## I. DENIAL OF DISCHARGE

■ The bankruptcy court held that the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2). The Debtors contend that this ruling was erroneous for several reasons. First, it is contended that certain assets alleged to have been transferred or concealed were not "property of the debtor" as required by the statute. Section 727(a)(2) provides:

(a) The court shall grant the debtor a discharge, unless—

(1) . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

2. The order was entered on January 10, 1992, *nunc pro tunc* to the filing date of the original order.

The bankruptcy court based its denial of discharge in part on the Debtors' transfer of collected accounts receivable held by Adams Plywood ("AP"), a corporation in which Mr. Adams was the sole stockholder. These accounts receivable were subject to Barclays validly perfected security interest, and under the security agreement collections were required to be deposited into an account over which only Barclays had withdrawal authority (the "dominion" account). The bankruptcy court found that the Debtors, without authorization from Barclays, deposited approximately $150,000 in collections into AP's operating account, rather than the dominion account. The Debtors contend that these collections were the property of AP as a corporation, and therefore cannot constitute "property of the debtor" under § 727(a)(2)(A) as to them in their individual capacities.

■ As part of the security agreement with Barclays, the Debtors executed personal guarantees of the AP debt. In addition, as Mr. Adams was the sole owner and decisionmaker of the corporation, AP was an "insider"[3] of the Debtors under § 727(a)(7).[4] *See In re Powell,* 88 B.R. 114 (Bankr.W.D.Tex. 1988). The circumstances in this case are similar to those in *Powell,* in which the court stated:

> Section 727(a)(7) makes an individual debtor liable to the extent he or she engages in conduct on behalf of an insider which violates any of the first six subsections of Section 727(a). Powell, as both 90% owner, officer, operator and prime employer of Fine Jewelry, was the human person who was the actor and decisionmaker for the corporate person, Fine Jewelry. Fine Jewelry is an insider under the Bankruptcy Code. 11 U.S.C. § 101([31]). Thus, if Fine Jewelry can be said to have violated any of the provisions of Section 727(a), it

did so by and through C.B. Powell. The failure of Fine Jewelry to either account for the deterioration of its inventory or preserve its records so that that determination could be made must ultimately be the responsibility of its owner and operator.... For this reason, the Court concludes that Fine Jewelry through its principal ... has run afoul of subsections (a)(3) and (a)(5) of Section 727, thereby rendering Powell vulnerable under Section 727(a)(7). Powell's discharge will therefore be denied.

88 B.R. at 117. *See also Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1559–60 (11th Cir.1987).

The Adams' actions on behalf of AP are attributable to them personally because Mr. Adams was the owner and operator of the corporation, and both Mr. and Mrs. Adams personally guaranteed the AP debt. Therefore, the Adams' transfer and concealment of approximately $150,000 of AP's accounts receivable collections were properly considered by the bankruptcy court, via § 727(a)(7), in determining whether a violation of § 727(a)(2) occurred.

■ The Debtors next maintain that the bankruptcy court was clearly erroneous when it found that $99,378.42 was transferred, post-petition, from AP's operating account into a personal account, and that $62,354.31 was subsequently disbursed from that account. Debtors argue that the funds were transferred into a corporate account, not a personal account. However, even if that finding is erroneous, the type of account into which the funds were deposited is irrelevant. The crux of the bankruptcy court's finding was that the transfer and subsequent disbursements were an *unauthorized* use of cash collateral. That finding is not affected by whether the account was corporate or

---

**3.** 11 U.S.C. § 101(31)(A) provides that an "insider" of an individual includes:
(i) relative of the debtor or of a general partner of the debtor;
(ii) partnership in which the debtor is a general partner;
(iii) general partner of the debtor;
(iv) corporation of which the debtor is a director, officer, or person in control;

**4.** Section 727(a)(7) provides:

(a) The court shall grant the debtor a discharge, unless—
(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

personal, and this court cannot say that it is clearly erroneous.

The Debtors also argue that the bankruptcy court found their explanation for the use of AP's cash collateral to be reasonable, and that a denial of discharge is inconsistent with that finding. However, the court actually found that "[t]he explanations of the Adamses for their depositing collected funds into the operating account and failing to remit same to Barclays' dominion account are reasonable. However, the separate testimonies of the Barclays' officials does much to discredit them." The bankruptcy court obviously found the Debtors' explanation reasonable on its face, but less than credible when considered in light of the testimony as a whole. This argument is meritless.

█ The Debtors also appeal to the court's discretion to grant a discharge even if it is determined that grounds for a denial exist, citing *Matter of Jones,* 67 B.R. 484 (Bankr. W.D.Mo.1985). However, *Jones* involved a large debt and a relatively small fraudulent transfer, plus other equitable considerations. None of those factors are present in this case. *See Matter of Hacker,* 90 B.R. 994, 997 (Bankr.W.D.Mo.1987).

█ Lastly, the Debtors contend that Barclays was required to prove the Debtors' intent under § 727(a)(2) by clear and convincing evidence, and that it failed to do so. Under § 727, the burden of proving an objection to discharge is on the objector. However, there is a split of authority as to whether an objection must be proved by clear and convincing evidence[5] or whether the burden is satisfied by a preponderance of the evidence.[6] Indeed, one court of appeals has issued conflicting opinions on this question. *Compare In re Adlman,* 541 F.2d 999, 1005 (2d Cir.1976) (objection to discharge must be proved by convincing evidence) *with In re Robinson,* 506 F.2d 1184, 1187 (2d Cir.1974) (fair preponderance of the evidence is suffi-

cient under § 727). The Sixth Circuit Court of Appeals has not ruled on the issue.

The United States Supreme Court, in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), held that a preponderance of the evidence standard, rather than a clear and convincing evidence standard, applies to all exceptions to discharge under 11 U.S.C. § 523(a). The Court stated:

> Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." We have previously held that a debtor has no constitutional or "fundamental" right to a discharge in bankruptcy....
>
> We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the "fresh start" policy of the Bankruptcy Code.... the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor."

498 U.S. at 286, 111 S.Ct. at 659 (citations omitted).

Although *Grogan* deals with § 523(a), this court finds that the Supreme Court's rationale applies with equal force to objections under § 727. Other courts have concurred. *See In re Cook,* 126 B.R. 261, 265–66 (Bankr. E.D.Tex.1991); *In re Hall,* 126 B.R. 117, 119–20 (Bankr.M.D.Fla.1991); *In re Davis,* 124 B.R. 831, 835 (Bankr.D.Kan.1991); *cf. In re Urban,* 130 B.R. 340, 344 (Bankr.M.D.Fla. 1991); *In re Goldstein,* 123 B.R. 514, 520 n. 14 (Bankr.E.D.Pa.1991). Therefore, Barclays needed to prove their objection to discharge only by a preponderance of the evidence. The bankruptcy court presumably found that that standard had been satisfied, and that the discharge should be denied.

---

5. *See, e.g., In re Overmyer,* 121 B.R. 272, 279–80 (Bankr.S.D.N.Y.1990); *In re Zell,* 108 B.R. 615, 623 (Bankr.S.D.Ohio 1989); *In re Dias,* 95 B.R. 419, 421 (Bankr.N.D.Tex.1988); *In re Woerner,* 66 B.R. 964, 972 (Bankr.E.D.Pa.1986); *In re Ford,* 53 B.R. 444, 449 (Bankr.W.D.Va.1984), *aff'd,* 773 F.2d 52 (4th Cir.1985).

6. *See, e.g., In re Shults,* 28 B.R. 395, 396 (Bankr. 9th Cir.1983); *Matter of Ayala,* 107 B.R. 271, 274 (Bankr.E.D.Cal.1989); *In re Parker,* 85 B.R. 384, 387 (Bankr.E.D.Va.1988), *aff'd,* 879 F.2d 863 (4th Cir.1989); *In re Riso,* 74 B.R. 750, 757 (Bankr.D.N.H.1987); *In re Clausen,* 44 B.R. 41, 45 (Bankr.D.Minn.1984).

■ After a thorough review of the record, this court holds that the bankruptcy court's findings of fact with regard to § 727(a)(2) are not clearly erroneous. The bankruptcy court had before it the Debtors' unauthorized transfer of collected accounts receivable into the AP operating account, the unauthorized post-petition transfer and use of cash collateral, a $12,000 check drawn on the Debtors' personal account and cashed by Mrs. Adams six weeks prior to the date of filing, and a transfer by Mrs. Adams of $4,404.50 worth of her husband's paychecks into a bank account in her maiden name approximately one month prior to filing. This evidence supports a finding that the Debtors intended to hinder, delay, or defraud their creditors. Therefore, the denial of discharge is affirmed.

## II. COMMERCIAL REASONABLENESS

■ Under the security agreement entered into between Barclays and the Debtors, Barclays was granted a security interest in the inventory of Adams Plywood, as well as in the accounts receivable. On October 22, 1984, the Debtors and Barclays entered into an agreement whereby the Debtors would abandon the inventory, and the automatic stay would be lifted in order to permit a foreclosure sale by Barclays. The agreement contained a provision that a minimum of $250,000 in net proceeds would be realized from the sale and applied to the Adams' indebtedness, even if the actual amount realized was less than $250,000. The foreclosure sale was conducted on November 28, 1984, in Birmingham, Alabama. As no bid higher than $250,000 was received, Barclays became the successful bidder at the guaranteed amount. The Debtors now contend that the bankruptcy court erred in holding that the foreclosure sale was conducted in a commercially reasonable manner.

The security agreement between the parties expressly provided that it was to be governed by North Carolina law, and the bankruptcy court so found. Under North Carolina law, a sale of collateral is conclusively deemed to be commercially reasonable in all aspects if the provisions of N.C.Gen.Stat. §§ 25-9-601 to -607 are substantially complied with.[7] The bankruptcy court found that Barclays had complied with all the requirements of the statute, and applied the presumption of commercial reasonableness.

The Debtors contend that there is no evidence that a notice of public sale was ever posted in the appropriate county courthouse as dictated by § 25-9-603(1). However, the record clearly shows otherwise. Herbert Falk, Jr., an attorney for Barclays, testified that on November 20, 1984, he caused the notice of public sale to be posted in the Jefferson County courthouse in Birmingham, Alabama. TR 558. This evidence is unrefuted. The record also contains evidence that Barclays complied with the remaining statutory requirements. Therefore, the findings of the bankruptcy court are not clearly erroneous, and the presumption of commercial reasonableness was correctly applied.

7. N.C.Gen.Stat. §§ 25-9-601 to -603 provide in relevant part:
§ 25-9-601—Disposition of collateral by public proceedings ... may be made in accordance with the provisions of this part. The provisions of this part are not mandatory ..., but any disposition of the collateral by public sale wherein the secured party has substantially complied with the procedures provided in this part shall conclusively be deemed to be commercially reasonable in all aspects.
§ 25-9-602—The notice of sale shall substantially:
(a) Refer to the security agreement pursuant to which the sale is held;
(b) Designate the date, hour and place of sale....
(c) Describe personal property to be sold substantially as it is described in the security agreement ... and may add such further description as will acquaint bidders with the nature of the property;
(d) State the terms of the sale provided by the security agreement ... including the amount of the cash deposit, if any, to be made by the highest bidder at the sale;
§ 25-9-603—
(1) In each public sale conducted hereunder, the notice of sale shall be posted on a bulletin board provided for the posting of such legal notices, in the courthouse, in the county in which the sale is to be held, for at least five days immediately preceding the sale.
(2) In addition to the posting of notice ... the secured party ... shall, at least five days before the date of sale, mail by registered or certified mail a copy of the notice of sale to each debtor obligated under the security agreement....

### III. MONEY JUDGMENT

■ The bankruptcy court awarded Barclays a nondischargeable money judgment in the amount of $731,367.74 plus interest. The Debtors contend that this judgment was erroneous. First, it is argued that the amount of damages awarded by the bankruptcy court cannot be upheld because the *ad damnum* clause in the amended complaint is only for $400,000. However, paragraph five of the amended complaint alleges an unpaid balance exceeding $800,000. In addition, no objection was made at trial to the admission of evidence concerning damages in amounts in excess of $400,000. Therefore, the issue was tried by consent pursuant to Fed.R.Civ.P. 15(b) and Bankr.Rule 7015, and may not be complained of on appeal.

■ The Debtors also contend that the damage award is improper because it is speculative in amount, and because it contains an excessive award of attorneys'. fees and expenses. However, in *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931), the Supreme Court stated:

> [T]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.

282 U.S. at 562, 51 S.Ct. at 250. *Accord Broan Mfg. Co., Inc. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235 (6th Cir.1991). As it is clear from the record that Barclays sustained substantial damages, a sizable money judgment would be appropriate.

■ The Debtors' maintain that a large portion of the judgment constituted an improper award of attorneys' fees. It is argued that Barclays may be awarded attorneys' fees only for work associated with the bankruptcy proceedings. However, contrary to these assertions, a creditor is entitled to recover attorneys' fees in bankruptcy if there is a contractual right to them under the governing state law. Such a contractual right to attorneys' fees is part of the debt, and may be recovered accordingly. *See In re Martin*, 761 F.2d 1163, 1168 (6th Cir. 1985); *In re Bain*, 527 F.2d 681, 685 (6th Cir.1975).

North Carolina law provides:

> Obligations to pay attorneys' fees upon any ... evidence of indebtedness ... shall be valid and enforceable, and collectible as part of such debt ...: (1) If such ... evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said ... evidence of indebtedness.
>
> (2) If such ... evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said ... evidence of indebtedness.

N.C.Gen.Stat. § 6–21.2(1)–(2). The promissory note upon which the indebtedness in this case is based stated:

> In the event that this note shall at any time after maturity be placed with an attorney for collection, debtor agrees to pay in addition to the entire remaining principal balance and accrued interest a reasonable sum but not more than 15% of said principal balance and interest as and for attorneys' fees, if allowed by law.

In addition, the guarantee signed by the Debtors provides:

> Guarantor agrees to pay all expenses incurred by lender in connection with enforcement of its rights under this guarantee, as well as court costs, collection charges and attorneys' fees and disbursements.

■ Barclays clearly is entitled to recover reasonable attorneys' fees and expenses, not to exceed fifteen percent of the "outstanding balance" owed on the debt.

However, under North Carolina law it is incumbent upon the trial court to make specific findings as to the reasonableness of an award of fees and expenses. *Barker v. Agee*, 93 N.C.App. 537, 378 S.E.2d 566, 570 (Ct. 1989); *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C.App. 221, 319 S.E.2d 650, 656 (Ct.1984). The bankruptcy court did not specify how much of the judgment constituted attorneys' fees and expenses, and did not inquire as to the reasonableness of those fees and expenses. Therefore, the case must be remanded for this determination. As a part of the reasonableness inquiry, the bankruptcy court should determine whether the fifteen percent cap on the fee award should be calculated on the outstanding balance of the debt at the time Barclays brought suit on the Debtors' personal guarantee in United States District Court in North Carolina, or on the outstanding balance at the time the adversary complaint in this bankruptcy was filed.[8]

## IV. DISQUALIFICATION OF BANKRUPTCY JUDGE

 After the trial of this case, and after judgment had been entered, the Debtors' filed a motion to reopen the case, for a new trial, and to disqualify the bankruptcy judge. The Debtors alleged, based on newly discovered information, that the bankruptcy judge who had presided over the case, the Honorable William B. Leffler, was personally biased or prejudiced against them, and that his impartiality was questionable. They sought a new trial, and requested that Judge Leffler disqualify himself pursuant to 28 U.S.C. § 455. Judge Leffler ruled that he had obtained no extrajudicial information which affected his opinion in the case, and denied the motion.

Subsequent to the filing of the adversary complaint in this case, the Debtors and their original counsel of record, Philip T. Shanks, III and Ronald T. Riggs, became involved in a disciplinary proceeding before the Board of Professional Responsibility of the Tennessee

Supreme Court. The Debtors alleged that in the Barclays adversary proceeding, during a hearing before Judge Leffler on September 12, 1985, Mr. Shanks in some way touched, intimidated, threatened, or otherwise harmed Mrs. Adams. It was also alleged that Mr. Riggs and Mr. Shanks had "sold out" in the bankruptcy proceeding, conspiring to deprive the Debtors of their rights under the bankruptcy code.

Judge Leffler, on behalf of Mr. Shanks and Mr. Riggs, submitted ·two affidavits to the Board of Professional Responsibility. In the first, he stated that during the hearing on September 12, 1985, he observed no conduct on the part of Mr. Shanks such as had been alleged. In the second affidavit he stated that he had seen no evidence of and had observed no wrongdoing on the part of either Mr. Shanks or Mr. Riggs during the bankruptcy proceedings. The Debtors contend that these affidavits are evidence of personal bias or prejudice on the part of Judge Leffler, and that his impartiality was questionable. 28 U.S.C. § 455 provides in relevant part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

 Bias sufficient to justify recusal must be personal, stemming from an extrajudicial source, and must "result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *See also Garver v. United States*, 846 F.2d 1029, 1031 (6th Cir.1988); *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1337 (6th Cir.1987); *In re M.*

---

**8.** N.C.Gen.Stat. § 6–21.2(3) provides:

As to notes and other writing(s) evidencing an indebtedness arising out of a loan of money to the debtor, the "outstanding balance" shall

mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

*Ibrahim Khan, P.S.C.*, 751 F.2d 162, 164 (6th Cir.1984).

The affidavits submitted by Judge Leffler on behalf of Mr. Shanks and Mr. Riggs contain no information of an extrajudicial nature, and no indication that the Judge had obtained such information. The affidavits merely state the Judge Leffler's impressions of the evidence before him, and his recollection of conduct which he observed in court proceedings. These perceptions cannot be the basis for an allegation of bias.

 The Debtors point to several adverse rulings by Judge Leffler as evidence of his questionable impartiality. However, the mere fact that a judge has ruled against a litigant is not evidence of prejudice. There are no facts in the record which would lead a reasonable person to doubt Judge Leffler's impartiality. The denial of the motion to reopen case, for a new trial, and to disqualify is affirmed.

## V. CONCLUSION

In summary, the court hereby affirms the bankruptcy court's denial of the Debtors' discharge, the finding that Barclays disposed of its collateral in a commercially reasonable manner, and the denial of the motion to disqualify the bankruptcy judge. The case is remanded for further proceedings with regard to attorneys' fees, in accordance with part III of this opinion.

IT IS SO ORDERED.

ORDER AMENDING ORDER OF JANUARY 30, 1992, AND JUDGMENT OF FEBRUARY 25, 1992, AND CERTIFYING JUDGMENT AS FINAL

On January 30, 1992, this court entered an order partially affirming the decision of the bankruptcy court, and remanding for further proceedings in connection with the amount of attorneys' fees and costs to be included in the judgment. On November 24, 1992, the bankruptcy court entered an order resolving the issue of attorneys' fees and costs, and amending its prior judgment to incorporate that determination.

This court's order of January 30, 1992, is amended to incorporate the ruling of the bankruptcy court on the remanded issues.

The judgment entered on February 25, 1992, is also amended to incorporate the ruling on remand, and the court hereby certifies that amended judgment as final and appealable under Fed.R.Civ.P. 54(b).

IT IS SO ORDERED.