**In re Norman BARMAN, Debtor.**

**Sheila Solomon, Chapter 7 Trustee for Harold and Evelyn Barman, Plaintiff,**

**v.**

**Norman Barman, Defendant.**

**Bankruptcy No. 99–45133–R. Adversary No. 99–4514.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Feb. 14, 2000.

---

Thomas Morris, West Bloomfield, MI, for Plaintiff.

Frank Fortescue, Birmingham, MI, for Defendant.

## Opinion

STEVEN W. RHODES, Bankruptcy Judge.

Sheila Solomon, the trustee in the chapter 7 bankruptcy case of the debtor's parents, Harold and Evelyn Barman, filed this complaint objecting to the discharge of Norman Barman under 11 U.S.C. § 727(a)(3) and (5). Following a trial, the Court took the matter under advisement. The Court concludes that because the debtor failed to keep records from which his financial condition could be ascertained and because he has not satisfactorily explained his loss of assets, the debtor's discharge must be denied.[1]

## I.

The evidence pertaining to the plaintiff's claims under § 727(a)(3) and (5) is largely uncontroverted. On May 27, 1998, Harold and Evelyn Barman wired to their bank account approximately $131,000, which they received when they refinanced a home located in South Carolina. Then, over a one to two week period, they withdrew this money in roughly equal increments of approximately $25,000, which they immediately gave to the debtor.

The debtor testified that even though the home was titled in his parents' names, it was actually his property. He stated that this title arrangement was necessary because poor credit prohibited him from obtaining financing to purchase the home. He further stated that because it was his house, his parents gave him the money from the refinancing. He testified that he had paid the down payment on the house and had given cash to his parents for the mortgage payments.[2] He further testified that he lost the entire $131,000 gambling.

Solomon contends that the debtor's discharge should be denied because he failed to keep any records of his financial affairs and because he failed to satisfactorily explain his loss of assets. She asserts standing as a creditor because of her preference and fraudulent conveyance claims against the debtor arising from the cash transfer of $131,000 that Harold and Evelyn Barman made to the debtor before they filed bankruptcy.

The debtor argues that Solomon is not a creditor and therefore does not have standing to object to his discharge. This is based on the debtor's argument that the preference and fraudulent conveyance claims have no merit because his parents held the South Carolina property, and therefore proceeds from the refinancing of it, in trust for him. At trial, apart from attempting to prove his ownership of the proceeds of the refinancing and therefore

---

1. Solomon also asserts that the debtor's discharge should be denied under 11 U.S.C. § 727(a)(2) and (7), and that the debtor's debts owing to the estate of Harold and Evelyn Barman are nondischargeable under § 523(a)(2), (4), and (6). In light of the Court's denial of the debtor's discharge on other grounds, it is unnecessary to address these claims, and they will be dismissed without prejudice.

2. Although Solomon may take the position that Harold and Evelyn Barman had an interest in the South Carolina property, it is unnecessary to resolve that issue for purposes of resolving Solomon's objections to the debtor's discharge under 11 U.S.C. § 727(a)(3) and (5). It is undisputed that whether by gift from his parents or by transfer of his own proceeds, the $131,000 in cash did become the debtor's property.

Solomon's lack of standing, the debtor offered very little argument or evidence in defense to Solomon's objection to his discharge under § 727(a)(3) and (5).

## II. Standing

■ 11 U.S.C. § 727(c)(1) permits a creditor to object to the granting of a discharge under § 727(a). The bankruptcy code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Thus, an entity claiming a right to payment that arose pre-petition is a creditor even if the debtor disputes the claim. *McGrath v. Moreau (In re Moreau)*, 161 B.R. 742, 745 (Bankr.D.Conn. 1993).

As noted, Solomon asserts that she has a claim against the debtor on behalf of the estate of Harold and Evelyn Barman for either a preference or a fraudulent conveyance arising from the $131,000 that Harold and Evelyn Barman transferred to the debtor. Further, the debtor disputes the trustee's preferences and fraudulent conveyance claims and argues that the $131,000 that his parents transferred to him was actually his money that they were holding in trust for him.

■ The Court must conclude that this dispute does not affect Solomon's status as a creditor. *See American Motors*

*Leasing Corp. v. Morando (In re Morando)*, 116 B.R. 14, 15 (Bankr.D.Mass.1990) (Creditor had standing to challenge the debtor's discharge even though the claim was disputed and the subject of litigation in the district court.). In *Stanley v. Vahlsing (In re Vahlsing)*, 829 F.2d 565, 567 (5th Cir.1987), the court stated, "Only those creditors who have claims that will be affected by the discharge can file objections. A discharge would affect the interests of creditors with disputed claims since they have a chance of prevailing on their claims." (citation omitted)

Accordingly, the Court concludes that Solomon, as trustee for the estate of Harold and Evelyn Barman, fits within the broad definition of "creditor" and thus has standing to object to the discharge of Norman Barman.[3]

## III. Objections to Discharge

■ Objections to discharge under § 727(a) require proof by a preponderance of the evidence and the objecting party bears the burden of proof. *Barclays/American Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994).

11 U.S.C. § 727 provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, docu-

---

**3.** Although it is not clear, the debtor may be asserting here that because Solomon's preference and fraudulent conveyance claims have no merit, she is not a "creditor." The Court rejects this argument for two reasons. First, nothing in § 727(c) limits standing to object to the discharge to creditors whose claims are first allowed in the bankruptcy case. Indeed, in the rare cases that appear to be asset cases and therefore claims are filed, the deadline for most creditors to file proofs of claim (90 days after the meeting of creditors, per FED. R. BANKR. P. 3002(c) ) occurs after the deadline

to file objections to discharge (60 days after the meeting of creditors, per FED. R. BANKR P. 4004(a)). If Congress intended to limit standing to only those creditors with allowed claims, it could easily have crafted the statutory language to reflect that intent. Thus, as demonstrated in the text, even a party with a disputed claim is a "creditor." Second, when there are no assets available for distribution, as in most chapter 7 cases, even the filing of claims by creditors, let alone actually litigating such claims, is strongly discouraged. *See* FED. R. BANKR. P. 2002(e) and 3002(c)(5).

ments, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(3) and (5).

## IV. Section 727(a)(3)

■ To sustain an objection to a discharge under § 727(a)(3), the proof must establish: (1) either that the debtor failed to keep or preserve any recorded information, including books, documents, records and papers, or that the debtor or someone acting for him destroyed, mutilated, falsified, or concealed any recorded information including books, documents, records and papers; and (2) that as a result, it is impossible to ascertain the financial condition and material business transactions of the debtor. 6 COLLIER ON BANKRUPTCY, ¶ 727.03[4] at 727–36 (Lawrence P. King ed., 15th ed.1998). " 'The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records.' " *Turoczy Bonding Co. v. Strbac* (*In re Strbac* ), 235 B.R. 880, 882 (6th Cir. BAP 1999) (quoting *Wazeter v. Michigan Nat'l Bank* (*In re Wazeter* ), 209 B.R. 222, 227 (W.D.Mich.1997) (citations omitted)). "However, '[o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor.' " *Id.* at 883 (quoting *United States v. Trogdon (In re Trogdon* ), 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990) (citations omitted)). *See also Meridian Bank v. Alten,* 958 F.2d 1226 (3d Cir.1992).

■ It is undisputed that the debtor did not keep any books, records, or accounts of his personal financial affairs. He testified that he has not had a bank account since

1990 and that all of his financial transactions were done in cash. He stated that his income was derived from gambling winnings and the sale of refurbished video gaming machines. However, all of his income was apparently in cash, with no documentation. He testified that he paid cash to his parents for the mortgage payments and household expenses. Again, he provided no documentation for this. He testified that in recent years, his wife has paid all of the household expenses and that he has not contributed any money. However, he also testified that he is currently self-employed as a professional gambler and that he services video equipment. He does have some income, but he provided no records to determine the state of his financial condition. Finally, as developed below, he kept no records of his gambling winnings or losses.

In his testimony, Barman made no attempt to meet his burden to establish a justification for his failure to keep records, as set forth in § 727(a)(3).

In these circumstances, the Court must conclude that the evidence fully warrants denying the debtor's discharge under § 727(a)(3).

## V. Section 727(a)(5)

■ Section 727(a)(5) is broad enough to include any unexplained disappearance or shortage of assets. *See Chalik v. Moorefield (In re Chalik* ), 748 F.2d 616 (11th Cir.1984). The initial burden is on the objecting party to introduce some evidence of the disappearance of substantial assets or of unusual transactions. 6 COLLIER ON BANKRUPTCY, ¶ 727.08 at 727–47 (Lawrence P. King ed., 15th ed.1998). The debtor must then satisfactorily explain what happened. *Id.* " To be satisfactory, an explanation must convince the judge.' " *Hawley v. Cement Indus., Inc. (In re Hawley* ), 51 F.3d 246, 249 (11th Cir.1995) (quoting *Chalik,* 748 F.2d at 619 (citation omitted)). *See also First American Bank of New York v. Bodenstein (In re Boden-*

*stein* ), 168 B.R. 23, 33 (Bankr.E.D.N.Y. 1994).

 Barman received approximately $131,000 in cash from his parents over a two week period in late May or early June of 1998. He testified that he immediately lost the entire amount gambling, mostly in Windsor, Ontario. Barman made no attempt to substantiate his testimony that he lost the money gambling or to explain his failure to document his losses.

Courts have consistently held that unsubstantiated gambling losses are a basis for denial of the discharge under § 727(a)(5). In *Dolin v. Northern Petrochemical Co. (In re Dolin* ), 799 F.2d 251 (6th Cir.1986), the court upheld the denial of the debtor's discharge under § 727(a)(5), stating:

> The Bankruptcy Court held that Dolin's general, unsubstantiated statements about his lifestyle did not "explain satisfactorily" the disposition of more than $500,000 in the three years proceeding his bankruptcy. We agree. Dolin could only allege that he used the money to support his cocaine habit and to gamble. The actual expenditures, to whom and when made, are unknown. We recognize that Dolin would not want to keep records of his cocaine purchases and gambling because the drug purchases were illegal and the gambling may have been illegal. The mere fact that a debtor has spent money illegally does not satisfactorily explain the debtor's deficiency of assets. In particular, we hold that neither Dolin's chemical dependency nor his compulsive gambling satisfactorily explain his deficiency of assets.

*Id.* at 253 (citation omitted).

> The problem of 'undocumented' theft and gambling losses claimed by a bankrupt debtor is especially troublesome to creditors and to bankruptcy courts because of the ease with which any debtor can make such claims to explain away a substantial discrepancy in his assets at the time of the bankruptcy filing.

*Indian Head Nat'l Bank v. Mitchell (In re Mitchell* ), 74 B.R. 457, 461 (Bankr.D.N.H. 1987). *See also Clark v. Clark (In re Clark* ), 211 B.R. 105 (Bankr.M.D.Fla.1997) (Vague assertions that money was lost through gambling, without corroborating documentation, is unacceptable); *Cassady–Pierce Co., Inc. v. Burns (In re Burns* ), 133 B.R. 181 (Bankr.W.D.Pa.1991) (Unsubstantiated gambling losses warrant denial of discharge.); *McManus v. McManus (In re McManus* ), 112 B.R. 773, 775 (Bankr. E.D.Va.1990) ("Bankruptcy is a privilege and creditors are defrauded if considerable funds are missing and this is merely chalked off to a gambling spree[.]"); *Dignam v. McMahon (In re McMahon* ), 116 B.R. 857 (Bankr.M.D.Fla.1990) (Court denied the discharge where there was no documentation, corroboration, or substantiation of alleged gambling losses.).

Accordingly, the Court concludes that Barman has not satisfactorily explained the loss of approximately $131,000, and that his discharge should therefore be denied under § 727(a)(5).

An appropriate order denying the debtor's discharge will be entered.