In re David Patrick **CARTER**, Debtor.

**Eleanor Beavers Haynes,
Trustee, Plaintiff,**

v.

**David Patrick Carter, Defendant.**

**Bankruptcy No. 00–56137.
Adversary No. 01–140.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Jan. 29, 2002.

---

Larry E. Staats, Columbus, OH, for Plaintiff.

Gary D. Kenworthy, Circleville, OH, for Defendant.

Eleanor Beavers Haynes, Columbus, OH, Chapter 7 Trustee.

## *MEMORANDUM OPINION AND ORDER*

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law regarding the Complaint to Deny Discharge and for Money Judgment filed on behalf of Eleanor Beavers Haynes, Trustee ("Plaintiff"), and the Answer filed on behalf of the Debtor, David Patrick Carter ("Defendant"). The Plaintiff alleges that the Defendant has failed to maintain records from which his financial condition may be ascertained, and that he has failed to satisfactorily explain financial losses, pursuant to section 727(a)(3) and (5) of the United States Bankruptcy Code. The Plaintiff also alleges that the Defendant had cash-type assets totaling $2,272.78 on the date of the bankruptcy filing (July 11, 2000). After the allowance of exemptions (O.R.C. section 2329.66(A)(4)(a) and (17)), it is asserted that the Defendant owes the bankruptcy estate the sum of $1,472.78.

The Court has heard testimony from the Defendant and has received into evidence Stipulations. Based upon this information, including an assessment of the Defendant's credibility, the Court has concluded that the Defendant has failed to maintain records from which his financial condition could be ascertained and has failed to satisfactorily explain significant financial losses. The Defendant is not entitled to receive a bankruptcy discharge. In addition, the Court concludes that the Defendant owes the estate the sum of $1,472.78 in non-exempt proceeds, plus statutory interest and costs of collection. A brief history of this case will illustrate the bases for the Court's decision.

The story begins when the Defendant, who is twice divorced with five children, sold his home on May 22, 2000, and walked away from the closing with the sum of $57,475.91. Around this same time, the Defendant also sold his automobile and purchased a 1991 Ford Ranger pickup truck. The Defendant testified that approximately $3,000.00 to $6,000.00 of the closing proceeds was placed in his checking account, from which bills were paid, and that approximately $5,000.00 or $6,000.00 was utilized to purchase travelers checks. The balance of approximately $40,000.00 was taken from the bank in cash, according to the Defendant's testimony. The Defendant then headed for Texas with his estranged girlfriend to attend a cattle judging school. They took with them the travelers checks and about half of the $40,000.00 in cash. The rest of the cash, approximately $20,000.00, was locked in a box and remained in the home the Defendant had just sold, while he was in Texas. No one was in the home during this period.

After spending a week to ten days in Texas, the Defendant and his estranged girlfriend headed back for Ohio, but made a stop along the way in Missouri. While there during the week of June 7–12, 2000, the Defendant frequented three river boat

gambling casinos along the Mississippi River, and according to his testimony, lost approximately $15,000.00 gambling. The Defendant, however, did not present any testimony from his estranged girlfriend to corroborate his claimed gambling losses while in Missouri. Upon returning to Ohio, the Defendant decided to spend some time with his five children. He took them to various fairs and festivals, and used a modest amount of the funds. Unfortunately, he also decided to go gambling again, this time to bolster his cash reserves, according to his testimony. The Defendant visited two river boat gambling casinos near Cincinnati, Ohio, and lost approximately $13,000.00 to $14,000.00. Again, the Defendant did not present any testimony from others to corroborate the claimed gambling losses. In addition to the large amounts lost gambling, the Defendant testified that the sum of $9,000.00 in the form of a cashier's check was paid to a Freddie Moore for repairs to the home that was sold. The Defendant was not able to produce any contract or invoice to support this payment. In addition, Freddie Moore cannot be located.

On June 28, 2000, the Defendant paid his bankruptcy attorney the sum of $500.00 to commence the instant bankruptcy proceeding, according to the Statement of Affairs. The petition was signed by the Defendant on July 7, 2000, and was filed with the Court on July 11, 2000. The Defendant scheduled priority debt to his two ex-wives in the total amount of $4,650.00 for child support arrearage, and the sum of $109,792.63 in general unse-cured debt. The unsecured debt includes approximately twenty credit card accounts. The Defendant testified that some of these obligations were incurred jointly with one of his former wives who filed bankruptcy. The Defendant is a high school graduate with a background in agriculture, and he is currently employed as a farm worker. He testified that because of his various moves since the sale of his home, records have been lost. The Defendant also testified that during the course of his two marriages, he never handled the family finances. According to the Stipulations filed by the parties and the Affidavit of the Defendant attached to his Answer, the Defendant can only account for the sum of $23,313.56. Also according to the Stipulations, the Defendant had at least $2,272.78 in cash-type assets on the date of filing, and after applicable exemptions are taken, there is a non-exempt balance of $1,472.78.

 Regarding the issue of whether the Defendant is entitled to a discharge, section 727(a)(3) and (5) of the United States Bankruptcy Code governs.[1] Objections to discharge are to be strictly construed against the objecting party and liberally in favor of debtors to promote the penultimate goal of bankruptcy-providing a "fresh start" to honest debtors. *In re Gannon,* 173 B.R. 313, 316 (Bankr. S.D.N.Y.1994); *In re Stanke,* 234 B.R. 449, 456 (Bankr.W.D.Mo.1999). Objections to discharge must be established by a preponderance of the evidence, and the movant must carry the burden. *In re Gannon* at 316–317; *In re Stanke* at 456; *Barclays/American Business Credit, Inc. v.*

---

**1.** Section 727(a)(3) and (5) provide in relevant part as follows:

The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

...

(5) the debtor has failed to explain satisfactorily, ... any loss of assets or deficiency of assets to meet the debtor's liabilities; ....

*Adams (In re Adams),* 171 B.R. 298, 303 (W.D.Tenn.1992), *aff'd* 31 F.3d 389 (6th Cir.1994), *cert. denied* 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995); FRBP 4005.

■■■■ The party alleging a violation under section 727(a)(3) of the United States Bankruptcy Code must initially establish that the books and records are inadequate, and then the burden of production shifts to the debtor to explain any deficiencies. *In re Wynn,* 261 B.R. 286, 299 (Bankr. M.D.Ala.2001). The underlying statutory goal is to require an accurate presentation of the debtor's financial affairs as the *quid pro quo* for a discharge. *In re Wynn* at 299. There is no statutory requirement, however, that the debtor maintain particular types of records, or that the records are maintained in perfect condition. The records must sufficiently identify transactions to facilitate creditors' inquiries. *In re Wynn* at 299–300. At a minimum, there must be written evidence of the debtor's present financial condition and for a reasonable period in the past. *In re Wynn* at 300. Factors that courts may consider include: (a) the debtor's educational background and level of sophistication; (b) the debtor's personal financial structure; and (c) the debtor's business experience and the size and complexity of any business. *In re Wynn* at 300; *In re Strbac,* 235 B.R. 880, 882 (6th Cir. BAP 1999).

■■■■ Where a creditor alleges a violation under section 727(a)(5) of the United States Bankruptcy Code, the creditor must produce evidence to establish that the debtor had an interest in identifiable property for a reasonable period before filing. It is not enough to merely allege a loss—there must be specifics. *In re Mezvinsky,* 265 B.R. 681, 689 (Bankr.E.D.Pa.2001). Once this initial burden of going forward has been satisfied, then the burden of production shifts to the debtor to satisfactori-

ly explain losses or deficiencies. *In re Mezvinsky* at 689. In making such judgment calls, courts are not to be concerned with whether any disposition· has been proper under the Bankruptcy Code, but whether or not the explanation provides a satisfactory description of what happened. *In re Mezvinsky* at 690. Therefore, when debtors are faced with an objection to discharge, they must produce or gather documents that they might not ordinarily keep and/or employ accountants to explain losses. *In re Mezvinsky* at 690–691.

■■■■ Courts and commentators have addressed the significance of gambling losses in the context of whether debtors should receive discharges. They have focused upon the relative ease in which such claims may be used to explain substantial deficiencies in assets at the time of the bankruptcy filing, and that judges must assess the credibility of debtors and the explanations in each case. *In re Barman,* 244 B.R. 896, 901 (Bankr.E.D.Mich.2000), *citing In re Mitchell,* 74 B.R. 457, 461 (Bankr.D.N.H.1987); *See generally,* John Norwood, "The Judicial Treatment of Gambling Related Transactions in Current Bankruptcy Proceedings," 106 Com. L.J. 25, 57–63 (Spring 2001); Hon. David S. Kennedy and James E. Bailey, III, "Gambling and the Bankruptcy Discharge: An Historical Exegesis and Case Survey," 11 Bankr.Dev. J. 49 (1994–1995). The conclusion has been that generally such vague assertions, in the absence of corroborating documentation, are insufficient. *In re Barman* at 901, *citing In re Clark,* 211 B.R. 105, 107 (Bankr.M.D.Fla.1997); *In re Burns,* 133 B.R. 181, 184–185 (Bankr. W.D.Pa.1991). The underlying premise is that since bankruptcy is a privilege, creditors are defrauded where significant funds are missing and the only excuse offered is that they were lost gambling. *In re Mc-*

*Manus*, 112 B.R. 773, 775 (Bankr.E.D.Va. 1990).

In the instant case, according to the Stipulations and the Affidavit of the Defendant, he can only account for the sum of $23,313.56. The Defendant has sought to explain through testimony that approximately $30,000.00 was lost gambling, without providing any supporting documentation or corroborating testimony. The Defendant further testified that records have been lost in the moving process, and that he never was responsible for maintaining financial records during the course of his two marriages. One of the other large expenditures ($9,000.00 for home improvements) is documented only by a cashier's check written to a party that cannot be found, and there is no supporting contract or invoice.

In view of the large sum that the Defendant had in his possession in the approximately month and a half prior to filing bankruptcy, and the speed in which it was apparently depleted, the Court does not find the Defendant's explanations credible and sufficient. It is difficult to believe that the Defendant did not discuss the claimed gambling losses with his estranged girlfriend or anyone else who could corroborate his testimony. In addition, the Court does not find it credible that the Defendant would travel across the country with approximately $20,000.00 in cash and leave an equal amount in a lock box in an unattended house that had just been sold. The Court is not persuaded by the Debtor's excuse that records may have been lost during his relocation and/or that he deferred to his two former spouses to maintain financial records. The Court concludes that the Plaintiff has sustained her burden, and that the Defendant has failed to come forward with sufficient and credible information to explain the financial losses and has failed to adequately and credibly explain the deficiency of his financial records. Accordingly, the Defendant shall not be granted a discharge.

Regarding the issue of the non-exempt funds, the Stipulations detail that the parties have agreed to the essential facts and the applicability of the exemption provisions. Accordingly, the Plaintiff is also entitled to judgment on the exemption challenges, and the Defendant must pay to the Plaintiff the sum of $1,472.78, representing the non-exempt proceeds.

**IT IS SO ORDERED.**